IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Ind. 21-CR-22 |
| ) | |
| WILLIAM "RODDIE" BRYAN, ) | |
|     Defendant ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant William "Roddie" Bryan and submits to the Court the following statements and arguments in advance of his sentencing hearing:

**Roddie Bryan's Personal Background**

Roddie Bryan is almost 53 years old and has lived his entire life in the Southern District of Georgia. He is a 1988 graduate of Brunswick High School and has become very skilled in small engine repair. At the time of his arrest, he was working as an independent contractor through Southern Hardware in Brunswick performing such repairs. He also worked as a small engine mechanic at Griffin Bike & Mower in Brunswick from 1987 to 2011, and in between that job and his contracting work he was employed by the Glynn County Board of Education as a mechanic.

As detailed in his PSR, Roddie Bryan had not accumulated much in the way of financial assets, but he had worked extremely hard and had recently become a homeowner in the Satilla Shores neighborhood shortly before Mr. Arbery was killed. Although he began consuming alcohol at a very young age and was a daily drinker, he attended an inpatient substance abuse treatment in 2013 in St. Simons and has not consumed alcohol since that time.

Prior to this incident, Roddie Bryan had one previous criminal conviction, that for a DUI in 1990 at the age of 21.  He only had one other lifetime arrest, that being a misdemeanor marijuana charge which was dismissed (also in 1990 at age 21).

## **Comparison to Codefendants Travis and Greg McMichael**

While all three defendants had a lack of prior criminal history and a solid record of employment, Roddie Bryan is worthy of a lesser sentence than his two co-defendants for clear and important reasons.  There was extremely damaging 404(b) evidence introduced at trial against all the defendants, but the ugliest of such was that from the social media of Travis McMichael.  Travis' social media and text messaging revealed the darkest of racist beliefs.  While Greg McMichael's phone was not able to be unlocked by the Government, there was witness testimony that he celebrated the death of the great Julian Bond and suggested that African Americans were "nothing but trouble."  Although there was unfortunate and embarrassing evidence in this regard introduced against Bryan, he submits that there was not the type of hatred in his comments as in those of his codefendants.

As to the crime itself, again there are clear distinctions between the defendants.  Roddie Bryan's introduction to Arbery was a young man being chased in broad daylight and yelled at to "stop."  He assumed the young man had committed a crime and thought he was doing the right thing by joining in the chase.  The McMichaels had seen Arbery before on surveillance footage from the construction site, although in that footage the young man was only walking through the area and was not committing a crime.  Thus, when the McMichaels saw Arbery running at full sprint through their neighborhood, with nothing on his person, there was far less reason for them to assume Arbery had committed any criminal offense.

It is also significant that when the three defendants each made the decision to pursue Arbery, the two McMichaels first obtained firearms, while Roddie Bryan did not. A video of Roddie Bryan's pursuit of Arbery was played for the jury in large part, and it was clear that he did all he could do to not strike Arbery with his car, but rather drove at the same pace as Arbery as he attempted to take video of the young man. While the McMichaels were prepared for the worst and seemingly willing to do whatever had to be done to effectuate their misguided notions of justice, Roddie Bryan had no such agenda and would never have caused physical harm to Ahmad Arbery.

Bryan's actions after the killing are also noteworthy, as he immediately told law enforcement that he had both the pursuit and the shooting recorded on his cell phone. Indeed, Bryan made all of the contents of his phone available to law enforcement, offered his home security video for review, and sat for several voluntary interviews. Bryan submits that these cooperative actions are clear evidence that on February 23, 2020 – at least in his own conscious mind – he was not acting with an intent to cause harm to Ahmaud Arbery but with lawful purposes in mind.

## Victim Related Adjustment Under USSG §3A1.1(a)

Paragraph 69 of the PSR includes a three-level increase in offense level under USSG §3A1.1(a) do to the fact that Roddie Bryan "intentionally selected" Mr. Arbery as the object of the offense because of his race. The Application Notes indicate that this enhancement applies to offenses that are hate crimes.

We have sadly seen numerous high-profile cases around the country which clearly fall within the ambit of this adjustment. Buffalo, N.Y. shooter Payton Gendron was an avowed White Supremacist who intentionally targeted black shoppers in May of this year. Gendron killed ten persons and had inscrolled "Here's your reparations" on his firearm. Omar Mateen targeted a gay

night club in Orlando, Florida in 2016 and killed forty-three persons. Mateen was a radical Islamist who according to his father, had recently been angered seeing a same-sex couple kissing in public. These are just two examples of defendants who have intentionally selected a class of persons as targets of violence. Such defendants show levels of hatred and disregard for humanity that surely warrant longer sentences than would ordinarily apply. Those type of defendants are more likely to offend and are in need of more rehabilitation (thus longer sentences would be appropriate under 18 USC 3553 (a)(2)(C) and (D)).

Here however, the Government has repeatedly acknowledged Roddie Bryan did not have a specific plan to target any person of color on February 23, 2020, and it assured the jury numerous times that it did not have to prove Bryan had any hatred. While the jury found that Arbery's race was a "but-for" cause of the rights deprivation, there was no evidence Bryan intentionally selected a black victim, or that he had any hate in his heart on that day. Rather, the jury's verdict evidenced an acceptance of the Government's well-crafted argument that Bryan's actions were due to a subconscious opinion of Arbery (i.e. he considered him more likely to have committed a crime than had he been white). This victim-related adjustment is not one which is the focus of much appellate attention, and this case is clearly not the typical "hate crime" case. However, it clearly is within this Court's discretion to refuse to apply this three-level adjustment on grounds that "intentionally selected" is not the same *mens rea* as the subconscious ignorance that prompted Roddie Bryan's actions.

Without the implementation of this victim related adjustment, Bryan's Adjusted Offense Level would be 41 and his sentencing range would be 324-405 months.

## The Impact of Travis McMicheals Unilateral Decision to Draw Upon and Shoot Ahmaud Arbery Under USSG 2A1.1

Bryan's Adjusted Offense Levels for both Counts 2 and 3 are 44 (PSR paras. 63 and 72), and thus his Adjusted Offense Level for Group is also 44 (PSR para. 73). As this is a rare instance where the total offense level is more than 43, the offense is simply treated as a total offense level 43 (PSR para. 76). Included in this calculation is the increase in base offense level from 32 to 43 because of Travis McMichael's decision to shoot and kill Ahmaud Arbery (PSR paras. 57 and 67). Without this specific offense characteristic Bryan's base offense level would be 32, plus 4 (victim injury), plus 2 (dangerous weapon), plus 3 (the disputed intentional selection of victim), and minus 2 (minor participant) for a total offense level of 39. Bryan's sentencing range would then have been 262-327 months. Without this characteristic and also without the adjustment from §3A1.1(a) argued above, Bryan's hypothetical total offense level would be 36 and his sentencing range 188-235 months.

Although is not suggested that this specific offense characteristic regarding the felony murder is not called for under the Sentencing Guidelines, Bryan submits that the Court should consider the harshness of this result when computing a fair sentence in this case. The evidence at trial was that Bryan did not know the McMichaels, did not communicate with them on the day in question, and had no reason to believe they were armed or would physically harm Arbery. Unlike most codefendants who join in a criminal plan and act generally as one, here we saw the McMichaels acting with similar information and a similar goal but Bryan acting on a much different plane. While the implementation of this offense characteristic may be properly applied, the results of its implementation here are unjustly harsh and should be ameliorated by the Court in its final decision.

**Request for Downward Departure Under USSG §5K2.0**

Roddie Bryan made a regretful and misguided decision to join the McMichaels' pursuit of Ahmaud Arbery which eventually resulted in that young man's tragic death. The jury verdict must be respected at this stage and thus for the purposes of his sentencing hearing it is accepted as fact that Bryan would not have joined this pursuit had Arbery been white. All three defendants should and must be punished for the results of these crimes, but justice demands that Roddie Bryan not be sentenced to the same punishment as his codefendants. The evidence showed Bryan acting out of ignorance not hatred, and without the near expectation of potential violence as the McMichaels. When the McMichaels pulled off in their truck armed with firearms, they signed up for a possible shootout. Roddie Bryan did no such thing and acted with no such disregard for life. Accordingly, and for all the reasons expressed in this memorandum and to be expressed at his sentencing hearing, Roddie Bryan requests that this Court sentence him to a term of imprisonment less than a life sentence and to an extent deemed just and reasonable by the Court.

This 7th day of August, 2022.

/s/ *J. Pete Theodocion*

---

J. Pete Theodocion
507 Walker Street
Augusta, GA 30901
(706) 722-3000
Georgia Bar No. 703999

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2022, I electronically filed the foregoing **SENTENDING MEMORANDUM** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all interested persons.

/s/ J. Pete Theodocion

_____
J. Pete Theodocion
Attorney for William "Roddie" Bryan

Law Office of J. Pete Theodocion
507 Walker Street
Augusta, GA 30901
(706) 722-3000
Ga. Bar No. 703999